# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUCINDA GOODMAN<br>5413 Belmar Street<br>Philadelphia, PA 19143 | : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | |
| v. | : <br> : | Civil Action No. 02-CV- |
| PARKWAY MORTGAGE, INC., A SUCCESSOR<br>TO SAMMONS MORTGAGE, INC.<br>170 Barclay Farms Shopping Center<br>Route 70 East<br>Cherry Hill, NJ 08034 | : <br> : <br> : <br> : <br> : <br> : | |
| MIDLAND NATIONAL LIFE INSURANCE<br>COMPANY<br>170 Barclay Farms Shopping Center<br>Route 70 East<br>Cherry Hill, NJ 08034 | : <br> : <br> : <br> : <br> : <br> : | |
| PARKWAY MORTGAGE, INC.<br>1700 Galloping Hill Road<br>Kenilworth, NJ 08034 | : <br> : <br> : | JURY TRIAL DEMANDED |
| GREENFIELD LIQUIDATION CORPORATION<br>359 James Street<br>Morristown, NJ 07960 | : <br> : <br> : <br> : | |
| J. BRIAN MORAN<br>359 James Street<br>Morristown, NJ 07960 | : <br> : <br> : <br> : | |
| WACHOVIA NATIONAL BANK OF<br>DELAWARE AS SUCCESSOR IN INTEREST<br>TO FIRST UNION NATIONAL BANK<br>8740 Research Drive - NC 5438<br>Charlotte, NC 28262-54388 | : <br> : <br> : <br> : <br> : <br> : | |
| INTERBAY FUNDING, LLC<br>2601 South Bayshore Drive - 4th Floor<br>Miami, Florida 33133 | : <br> : <br> : | |

MATTLEMAN WEINROTH & MILLER, P.C.    :
401 Route 70 East                                      :
Cherry Hill, NJ 08034                                 :
                                                                :
RICHARD W. ALLGOOD, IFA                   :
5034 Grant Avenue                                     :
Philadelphia, PA 19114                              :
                                                                :
                              Defendants.            :

## COMPLAINT

### Preliminary Statement

1. This is an action by Plaintiff Lucinda Goodman who is an elderly homeowner seeking relief from the fraudulent and oppressive lending practices of the Defendants in connection with a residential mortgage transaction. Plaintiff sought a small home improvement loan from the Defendants and Defendants arranged a high interest rate loan of almost twice the amount originally sought by the Plaintiff. The mortgage transaction included exorbitant fees and costs and the consolidation of unsecured debt, some of which Plaintiff did not authorize and was not aware of, thus increasing the exposure of her home to foreclosure. In addition, some of the proceeds of the loan were fraudulently disbursed and/or retained by one or more of the Defendants in a way that was not authorized by the Plaintiff.

2. Plaintiff seeks affirmative damages, punitive damages, costs and other relief against Defendants pursuant to the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1639 ("HOEPA"); the Federal Truth in Lending Act, 15 U.S.C. § 1601, et seq ("TILA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq.("ECOA"); the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.("UTPCPL"); and under common law. Plaintiff seeks to enforce her right to rescind the consumer credit transaction at issue and to actual damages,

treble damages, statutory damages, punitive damages and attorney fees and costs.

## Jurisdiction and Venue

3.   Jurisdiction over this matter is conferred upon this Court by the TILA, 15 U.S.C.

§1640(e) and 28 U.S.C. §§ 1331, 1337.  Supplemental jurisdiction over plaintiff's state law claims

is granted by 28 U.S.C. § 1367(a).

4.   Venue lies in this judicial district in that the events which gave rise to this claim

occurred here and the property which is the subject of the action is situated within this district.

## Parties

5.   Plaintiff, Lucinda Goodman (hereinafter "Plaintiff"), is a natural person, residing at

5413 Belmar Street, Philadelphia, PA 19143 (hereinafter the "Premises").

6.   Defendant Parkway Mortgage, Inc., a successor to Sammons Mortgage, Inc., is a

Delaware corporation engaged in the business of consumer lending in Pennsylvania, New Jersey

and elsewhere with a place of business located at 170 Barclay Farms Shopping Center, Rte. 70

East, Cherry Hill, NJ 08034.

7.   Defendant Midland National Life Insurance Company is an Iowa corporation affiliated

with Parkway Mortgage, Inc., Delaware and engaged in the business of consumer lending in

Pennsylvania, New Jersey and elsewhere.  Defendant Midland National Life Insurance Company

purchased, acquired and/or received by assignment some of the assets of a New Jersey

corporation that also operated by the name Parkway Mortgage, Inc.

8.   Defendant Parkway Mortgage, Inc. is a New Jersey corporation engaged in the

business of consumer lending in Pennsylvania, New Jersey and elsewhere with a place of business

at 1700 Galloping Hill Road, Kenilworth, NJ.

3

9.  Defendant Greenfield Liquidation Corporation is a corporation with offices in Morristown, New Jersey, which purchased, acquired and/or received by assignment some of the assets previously owned by Parkway Mortgage, Inc., New Jersey.

10.  Defendant J. Brian Moran is and was the owner of Parkway Mortgage Inc., New Jersey, at the time Parkway was acquired by Midland.

11.  Defendants Parkway Mortgage Inc., a successor to Sammons Mortgage, Inc.; Midland National Life Insurance Company; Parkway Mortgage, Inc.; Greenfield Liquidation Corporation; and J. Brian Moran will hereinafter be referred to collectively as the "Parkway Defendants."

12.  Defendant Wachovia National Bank of Delaware as Successor in Interest to First Union National Bank (hereinafter referred to as "Wachovia/First Union") is  a corporation engaged in the business of consumer lending in Pennsylvania and elsewhere with a place of business located at 8740 Research Drive - NC 5438, Charlotte, NC 28262-54388.  It is believed that the mortgage which is the subject matter of this lawsuit was sold, assigned, transferred and/or conveyed to First Union National Bank as Indenture Trustee.  It is further believed that First Union National Bank has changed to Wachovia National Bank of Delaware by merger effective in or about April of 2002.

13.  Defendant Interbay Funding, LLC is a mortgage corporation, conducting business under the laws of the Commonwealth of Pennsylvania with a place of business located at 2601 South Bayshore Drive, 4th Floor, Miami, Florida 33133.  It is believed that Interbay is the servicer for the loan which is the subject matter of this lawsuit.

14.  Defendant Mattleman Weinroth & Miller, P.C. (hereinafter referred to as

4

"Mattleman") is a corporation engaged in the business of providing legal services in Pennsylvania, New Jersey and elsewhere with an office located at 401 Route 70 East, Cherry Hill, NJ 08034. At all times relevant to this Complaint, defendant Mattleman acted by and through one or more of its agents, employees, servants and/or representatives in its individual capacity and as an agent of the Parkway Defendants.

15. Defendant Richard W. Allgood, IFA is a natural person in the business of appraising residential properties with a place of business located at 5034 Grant Avenue, Philadelphia, PA 19114.

**Factual Background**

16. In or about July of 2000, Plaintiff sought a small loan so that she could have some improvements performed on the bathroom of her home and so that she could pay off a small car loan.

17. Plaintiff contacted the Parkway Defendants by telephone and spoke to a representative and advised the representative that she was interested in obtaining a loan.

18. Thereafter, the Parkway Defendants sent an agent to visit Plaintiff at her home in order to obtain information about Plaintiff's income and to determine the type of home improvements that Plaintiff desired.

19. The agent that visited Plaintiff's home wanted Plaintiff to use a home improvement contractor recommended by the Parkway Defendants and became angry at Plaintiff when Plaintiff informed the agent that she had already chosen a contractor to perform the work.

20. Approximately one and a half to two months later an agent of the Parkway Defendants contacted Plaintiff and informed her that the Parkway Defendants would extend a loan

to her in the amount of $15,000.00.

21. Plaintiff asked the Parkway Defendants' agent what the amount of the monthly payments would be, but the agent would not reveal this information to Plaintiff.

22. A loan closing was held at the offices of Defendant Mattleman or at the Parkway Defendants' office located in Cherry Hill, NJ on or around September 6, 2000.

23. At the loan closing Plaintiff met with the Parkway Defendants' agent and with an attorney to sign the loan documents.

24. Upon information and belief, the attorney at the loan closing is a lawyer employed with the firm of defendant Mattleman.

25. Defendant Mattleman, through one of its attorneys, acted as the settlement agent and/or provided legal services at the Loan closing.

26. The Parkway Defendants' agent informed Plaintiff that her monthly payments under the loan agreement would equal $200.00 to $300.00.

27. Based on the representations made by the Parkway Defendants' agent and by defendant Mattleman, through one of its attorneys, Plaintiff signed documents to obtain the loan from the Parkway Defendants.

28. The loan that the Parkway Defendants arranged for Plaintiff was in the amount of $29,250.00 at a stated annual percentage rate of 15.118% with monthly payments equal to $344.00, which included a balloon payment of $26,320.53 and a prepayment penalty (hereinafter the "Loan").

29. Neither the Parkway Defendants' agent nor the Mattleman attorney sufficiently explained the loan documents to Plaintiff, and the Parkway Defendants' agent and the Mattleman

6

attorney failed to inform Plaintiff that the Loan contained a balloon payment or prepayment penalty.

30.  Although Plaintiff wanted her car loan to be paid off, the Parkway Defendants never arranged for the payment of her car loan in connection with the Loan.

31.  The Parkway Defendants, however, arranged for the payment of various other debts to third party creditors in the total amount of $9,711.47 even though Plaintiff did not request that such debts be paid off.

32.  Under the terms of the Loan, Plaintiff was supposed to have been paid a portion of the Loan proceeds directly, however, despite repeated requests by Plaintiff for the money, she never received the full amount and she believes this money was retained by the Parkway Defendants and/or Mattleman.

33.  Plaintiff also had to pay $3,740.40.00 in various loan-related charges and fees in connection with the Loan of which she was not aware.

34.  In connection with the Loan, the Parkway Defendants arranged for a deed to be prepared which transferred Plaintiffs's childrens' interest in the property at 5413 Belmar Street to Plaintiff, despite the fact that Plaintiff did not ask for this transfer to take place.

35.  Plaintiff was charged a recording fee in connection with the deed that was neither bona fide nor reasonable and, therefore, constitutes an undisclosed finance charge.

36.  On or about August 7, 2000, Defendant Allgood performed an appraisal of the Premises in order to secure the mortgage to the Parkway Defendants.  The appraisal was grossly exaggerated as the appraisal states that the Premises had a value of $46,000.00, however, upon information and belief, the property had a much lower value than the amount at which it was

appraised.

37. It is believed and therefore averred that Defendant Allgood overstated the value of the property to facilitate a loan for a greater amount of money than the property was worth.

38. Prior to the Loan closing, Plaintiff had to pay for an appraisal of her property. Because the appraisal was overstated, the fee for the appraisal does not constitute a bona fide or reasonable charge and, therefore, constitutes an undisclosed finance charge.

39. Upon information and belief, the Parkway Defendants and/or Mattleman failed to pay off certain debts belonging to Plaintiff that were supposed to be satisfied under the terms of the Loan.

40. Subsequent to the closing of the Loan, the Parkway Defendants assigned the mortgage to First Union/Wachovia.

41. At all times relevant hereto, the Parkway Defendants and First Union/Wachovia and/or their predecessors in interest constituted "creditors" within the meaning of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(a)(17).

42. The Loan was a "consumer credit transaction" within the meaning of 12 C.F.R. §226.2(a)(12); a "residential mortgage transaction" within the meaning of 12 C.F.R. §226.2(a)(24) and a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602.

## NOTICE OF RECISSION

43. Plaintiff has a continuing right to rescind the transaction pursuant to 15 U.S.C. § 1635, 1638 and 1640, and Regulation Z, § 226.23.

44. Plaintiff has exercised her right to rescind the Loan yet the Parkway Defendants and/or First Union/Wachovia have wrongfully failed to timely take the steps required under the

applicable provisions of the Truth in Lending Act and Regulation Z, 12 C.F.R. § 226.1, et. seq.

45. As result of this recission, the mortgage upon which the Parkway Defendants and/or First Union/Wachovia relies is void.

## COUNT I
## HOME OWNERSHIP AND EQUITY PROTECTION ACT,
## 15 U.S.C. § 1639(a) ("HOEPA")
## AGAINST THE PARKWAY DEFENDANTS AND FIRST UNION/WACHOVIA

46. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

47. All claims raised herein are raised as a set off or a recoupment against any liability on any valid lien which may survive the recission, to the extent they may not be available as an affirmative claim for damages for any reason.

48. The Loan is a "consumer credit transaction" within the meaning of 12 C.F.R. § 226.2(a)(12); a "residential mortgage transaction" within the meaning of 12 C.F.R. § 226.2(a)(24) and a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602.

49. The Loan is also a high-rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa).

50. Since the Loan meets the HOEPA definition of a high-rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three days before consummation of the transaction pursuant to 15 U.S.C. § 1639(b).

51. The Parkway Defendants did not provide the required HOEPA disclosures to Plaintiff three days prior to the closing of the Loan.

52. The Parkway Defendants and First Union/Wachovia have failed to take any action

necessary or appropriate to reflect the termination of any security interest created by the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z, § 226.23(d)(2).

WHEREFORE, Plaintiff prays this Court to:

(a)    Enter a judgment order which rescinds the transaction upon which the Parkway Defendants and/or First Union/Wachovia rely and which compels the Parkway Defendants and/or First Union/Wachovia to return to Plaintiff all money which she has paid in connection with the Loan;

(b)    Award statutory damages, against the Parkway Defendants and First Union/Wachovia in the amount of $2,000 for failure to provide the required three-day advance disclosures in connection with the Loan;

(c)    Award statutory damages of $2,000.00 against the Parkway Defendants and First Union/Wachovia for failing to rescind the Loan and mortgage within twenty (20) days after Plaintiff's notice of recission;

(d)    Award an amount equal to the sum of all finance charges and fees paid by Plaintiff in connection with the Loan;

(e)    Dissolve any liability which Plaintiff may have to the Parkway Defendants and/or First Union/Wachovia in connection with the Loan; and

(f)    Award reasonable attorneys' fees and costs.

## COUNT II
## TRUTH IN LENDING ACT, 15 U.S.C. § 1601, ET SEQ., ("TILA") AGAINST THE PARKWAY DEFENDANTS AND FIRST UNION/WACHOVIA

53.   Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

54.   The disclosures provided in connection with the Loan contained "material violations" under TILA which give rise to Plaintiff's right to rescind the Loan as the finance charge was understated and the amount financed was overstated, which also resulted in an understated annual

percentage rate.

55. All claims raised herein are raised as a set off or a recoupment against any liability on any valid lien which may survive the recission, to the extent they may not be available as an affirmative claim for damages for any reason.

56. The material violations under TILA enable Plaintiff to rescind the Loan.

WHEREFORE, Plaintiff prays this Court to:

(a) Enter an order rescinding the Loan and mortgage upon which the Parkway Defendants and First Union/Wachovia rely pursuant to TILA, 15 U.S.C. §§ 1635 and 1640;

(b) Award actual damages by way of recoupment due to the Parkway Defendants' and/or First Union/Wachovia's disclosure violations under TILA;

(c) Award statutory damages in the amount of $2,000 due to the Parkway Defendants' and/or First Union/Wachovia's disclosure violations under TILA;

(d) Award statutory damages of $2,000.00 against the Parkway Defendants and First Union/Wachovia for failing to rescind the Loan and mortgage within twenty (20) days after Plaintiff's notice of recission;

(e) Award an amount equal to the sum of all finance charges and fees paid by Plaintiff in connection with the Loan; and

(f) Award reasonable attorneys' fees and costs, and any other relief the Court finds appropriate.

## COUNT III
## EQUAL CREDIT OPPORTUNITY ACT
## ("ECOA"), 15 U.S.C. § 1691, ET. SEQ.
## AGAINST THE PARKWAY DEFENDANTS

57. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

11

58.  The Loan upon which the Parkway Defendants rely is covered by the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq.

59.  The Parkway Defendants' offer of credit to Plaintiff providing for a consolidation loan in the amount of $29,250.00 with a balloon payment was a counteroffer to Plaintiff's request for a home improvement loan that would provide only the amount necessary to finance the home improvements and pay off a small car loan sought by Plaintiff.

60.  The Parkway Defendants were required, yet failed, to provide Plaintiff with a written ECOA Notice of Counteroffer as required under 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 202.9, when it refused to grant a loan to Plaintiff in accordance with the terms requested by Plaintiff.

WHEREFORE, Plaintiff prays this Court to:

(a)    Award actual damages sustained by Plaintiff;

(b)    Award punitive damages of $10,000.00 pursuant to 15 U.S.C. § 1691e; and

(c)    Award attorney's fees and costs, and any other relief appropriate pursuant to 15 U.S.C. § 1691e.

## COUNT IV
## FRAUD
## AGAINST THE PARKWAY DEFENDANTS

61.  Plaintiff incorporates the paragraphs above by reference as if set forth herein in full.

62. The Parkway Defendants made material misrepresentations and omitted material information in order to induce Plaintiff to consummate the Loan, including, but not limited to:

a.    The Parkway Defendants modified the Loan to satisfy debts that Plaintiff had not authorized to be satisfied without informing Plaintiff of such modifications;

12

b.   The Parkway Defendants misrepresented to Plaintiff that the Loan would satisfy certain debt when, in fact, it did not;

c.   The Parkway Defendants misrepresented to Plaintiff that the Loan proceeds would be disbursed in accordance with the HUD-1 Settlement Statement of September 6, 2000;

d.   The Parkway Defendants failed to clearly explain its motives in requiring Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could have a first mortgage loan and thereby evade Pennsylvania usury laws;

e.   The Parkway Defendants failed to clearly explain its motives in requiring Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could make a secured loan in an amount high enough in relation to the value of the Premises so that Plaintiff is unable to refinance her Loan with Defendants' competitors;

f.   The Parkway Defendants misrepresented to Plaintiff that she would receive a certain amount of the Loan proceeds directly yet the Parkway Defendants and/or Mattleman retained a portion of those proceeds that were supposed to have been paid to Plaintiff; and

g.   The Parkway Defendants misrepresented to Plaintiff the actual amount of the Loan and/or the amount of the fees to be paid to the Parkway Defendants and others.

63.   The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Plaintiff to enter into the Loan, and Plaintiff reasonably relied on them and suffered damages as a result.

64.   As a result of the above misrepresentations and omissions, the Parkway Defendants are liable to the Plaintiff for:

(a)   Plaintiff's actual damages;

(b)   Punitive damages; and

(c)   Any other relief the Court finds appropriate.

13

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Parkway Defendants in the amount requested above.

**COUNT V**
**CONSPIRACY TO COMMIT FRAUD**
**AGAINST THE PARKWAY DEFENDANTS AND MATTLEMAN WEINROTH &**
**MILLER**

65.  Plaintiff incorporates the paragraphs above by reference as if set forth herein in full.

66.  The Parkway Defendants and Mattleman unlawfully and with intent to defraud the Plaintiff conspired and agreed together to injure the Plaintiff and to deceive Plaintiff into entering into this fraudulent and unlawful Loan by engaging in conduct which includes, but is not limited to the following:

    a.    Defendants conspired and agreed to misrepresent to Plaintiff that the Loan would satisfy certain debt when, in fact, it did not;

    b.    Defendants conspired and agreed to misrepresent to Plaintiff that the Loan proceeds would be, and were, disbursed in accordance with the HUD-1 Settlement Statement;

    c.    Defendants conspired and agreed to unlawfully retain some of the Loan proceeds and to not disburse the Loan proceeds as authorized by the Plaintiff on the HUD-1 Settlement Statement;

    d.    Defendants conspired and agreed to require Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could have a first mortgage loan and thereby evade Pennsylvania usury laws;

    e.    Defendants conspired and agreed to require Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could make a secured loan in an amount high enough in relation to the value of the Premises so that Plaintiff is unable to refinance her Loan with Defendants' competitors;

    f.    Defendants conspired and agreed to misrepresent to Plaintiff that she would receive a certain amount of the Loan proceeds directly yet the

14

          Parkway Defendants and/or Mattleman retained a portion of those proceeds that were supposed to have been paid to Plaintiff;

g.      Defendants conspired and agreed to misrepresent to Plaintiff the actual amount of the Loan and/or the amount of the fees to be paid to the Parkway Defendants and others;

h.      Defendants conspired and agreed to misrepresent to Plaintiff that the Loan was in Plaintiff's best interest when Defendants knew that it was not in her best interest;

i.      Defendants conspired and agreed to have Mattleman notarize the Loan documents and enable the Loan even though both Defendants knew it would be disadvantageous to the Plaintiff and would likely result in Plaintiff suffering from financial hardship and being unable to pay her monthly bills;

j.      Defendants conspired and agreed to have Mattleman notarize the Loan documents and enable the Loan even though both Defendants knew the Loan violated the provisions of TILA, HOEPA, ECOA, and the UTPCPL;

k.      Defendants conspired and agreed to have Mattleman benefit from this fraudulent transaction by having an arrangement whereby Mattleman would represent the Parkway Defendants in a mortgage foreclosure action against the Plaintiff when Plaintiff, as a result of the Loan, suffered financial hardships and fell behind in payments on the Loan.

67. Prior to the Loan closing, the Parkway Defendants engaged in communications with the Plaintiff in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan and to unlawfully retain a portion of the proceeds of the Loan.

68. The Parkway Defendants and Mattleman held a Loan closing on or about September 6, 2000 in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan and to unlawfully retain a portion of the proceeds of the Loan.

69. Several times after the Loan closing, the Parkway Defendants engaged in communications with the Plaintiff in the pursuit of the common purpose of unlawfully retaining a portion of the proceeds of the Loan.

70. Mattleman has specifically benefitted from this fraudulent transaction, and others like it, as Mattleman has been engaged by the Parkway Defendants to serve as foreclosure counsel after the Plaintiff was unable to make payments on this onerous and unfair loan.

71. The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Plaintiff to enter into the Loan and Plaintiff reasonably relied on them and suffered damages as a result.

72. As a result of the above conspiracy to commit fraud, Defendants are liable to the Plaintiff for:

      (a)     Plaintiff's actual damages;

      (b)     Punitive damages; and

      (c)     Any other relief the Court finds appropriate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants in the amount requested above.

**COUNT VI**
**FRAUD**
**AGAINST DEFENDANT ALLGOOD AND THE PARKWAY DEFENDANTS**

73. Plaintiff incorporates the paragraphs above by reference as if set forth herein in full.

74. Defendants made material misrepresentations and omitted material information in order to induce Plaintiff to enter into the Loan including, but not limited to:

      a.     Defendants misrepresented to Plaintiff that the appraisal of the premises was based upon the value of comparable properties;

      b.     Defendants failed to clearly explain to Plaintiff their motives in generating an appraisal for more than the value of the Premises;

      c.     Defendants misrepresented to Plaintiff that she would benefit from the

appraisal of the Premises; and

d.     Defendants misrepresented to Plaintiff that they were acting in her best interest when they conspired to generate an appraisal for more than the value of the Premises

75.  The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Plaintiff to enter into the contract and Plaintiff reasonably relied on them and suffered damages as a result.

76.  As a result of the above misrepresentations and omissions, Defendants are liable to the Plaintiff for:

(a)     Plaintiff's actual damages;

(b)     Plaintiff's damages resulting from her inability to refinance the Loan;

(c)     Punitive damages; and

(d)     Any other relief the Court finds appropriate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants in the amount requested above.

### COUNT VII
### CONSPIRACY TO COMMIT FRAUD
### AGAINST DEFENDANT ALLGOOD AND THE PARKWAY DEFENDANTS

77.  Plaintiff incorporates the paragraphs above by reference as if set forth herein in full.

78.  The Parkway Defendants and Allgood unlawfully and with intent to defraud the Plaintiff conspired and agreed together to injure the Plaintiff and to deceive Plaintiff into entering into this fraudulent and unlawful Loan by engaging in conduct which includes, but is not limited to the following:

a.     Defendants conspired and agreed to misrepresent to Plaintiff that the

17

appraisal of the premises was based upon the value of comparable properties;

b.   Defendants conspired and agreed to conduct an appraisal of the premises that was not based upon the value of comparable properties;

c.   Defendants conspired and agreed to misrepresent to Plaintiff their motives in generating an appraisal for more than the value of the Premises;

d.   Defendants conspired and agreed to generate an inflated appraisal of the premises so that the Parkway Defendants could make a secured loan in an amount high enough in relation to the value of the Premises so that Plaintiff is unable to refinance her Loan with the Parkway Defendants' competitors;

e.   Defendants conspired and agreed to misrepresent to Plaintiff that she would benefit from the appraisal of the Premises; and

f.   Defendants conspired and agreed to misrepresent to Plaintiff that they were acting in her best interest when they generated an appraisal for more than the value of the Premises

79.  Prior to the Loan closing, the Parkway Defendants and Allgood engaged in communications with the Plaintiff in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan.

80.  Prior to the Loan closing, Allgood visited the Premises in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan.

81.  The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Plaintiff to enter into the Loan and Plaintiff reasonably relied on them and suffered damages as a result.

82.  As a result of the above conspiracy to commit fraud, Defendants are liable to the Plaintiff for:

(a)   Plaintiff's actual damages;

(b)     Plaintiff's damages resulting from her inability to refinance thee Loan;

(c)     Punitive damages; and

(d)     Any other relief the Court finds appropriate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants in the amount requested above.

**COUNT VIII**
**CONVERSION**
**AGAINST THE PARKWAY DEFENDANTS AND MATTLEMAN WEINROTH &**
**MILLER**

83.   Plaintiff incorporates the paragraphs above by reference as if set forth herein in full.

84.   As a result of the mortgage transaction, Plaintiff received a Loan whereby she was entitled to the use of the Loan proceeds for her personal use and to pay off various secured and unsecured debt.

85.   At the time of settlement, Plaintiff was required to authorize the payment of some of the Loan proceeds to be forwarded to various creditors in order to pay off some of Plaintiff's debt.

86.   Upon information and belief, the Parkway Defendants and/or Mattleman failed to forward the authorized amounts to some of Plaintiff's creditors as required by the terms of the Loan and took the proceeds for their own use.

87.   Under the terms of the Loan, a portion of the Loan proceeds were to be paid directly to Plaintiff.

88.   The Parkway Defendants and/or Mattlleman, however, failed to provide the full amount of the designated proceeds to Plaintiff  as required by the terms of the Loan and took the

proceeds for their own use.

89.  The Parkway Defendants' and/or Mattlemans' taking of Plaintiff's Loan money and failure to apply it for the proper and agreed purpose constituted an interference with Plaintiff's right to those funds.

90.  As a result of the interference with Plaintiff's property, Plaintiff has not enjoyed the benefit of the property which belongs to her.

91.  As a result of the interference with Plaintiff's property, Plaintiff has suffered damages.

92.  The Parkway Defendants' and/or Mattlemans' behavior in taking the funds was intentional and with a wanton disregard for Plaintiff's right to the property as to support an award for punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Parkway Defendants and Mattleman for actual damages, punitive damages, costs and whatever other relief that this Court deems appropriate.

**COUNT IX**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW,  73 P.S. § 201-1 ET SEQ., ("UTPCPL")**
**AGAINST THE PARKWAY DEFENDANTS**

93.  Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

94.  The conduct of the Parkway Defendants constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq.

95.  The Parkway Defendants acted intentionally so as to induce Plaintiff to enter into the transaction.

20

96. The Parkway Defendants engaged in unfair and deceptive trade practices rendering Plaintiff unaware of the actual terms and obligations of the Loan.

97. The Parkway Defendants also affirmatively misrepresented the terms of the Loan in the disclosure documents delivered to Plaintiff.

98. The Parkway Defendants utilized artifice and deception to take advantage of Plaintiff's ignorance, confusion and lack of sophistication as it knew or should have known that Plaintiff, up until the time of settlement, had little understanding of the detrimental aspects and risks of the Loan and was unaware of the various charges imposed upon her in connection with the transaction.

99. Specifically, the Parkway Defendants committed unfair and deceptive trade practices, including, but not limited to, the following:

    a.    Arranging a high-cost, high-interest Loan to Plaintiff which consolidated unsecured debt thereby increasing the risk that Plaintiff's home would be subject to foreclosure and failing to inform Plaintiff of the increased risk;

    b.    Failing to explain its motives in requiring Plaintiff to borrow additional sums to pay gas and water bills, so that the Parkway Defendants could have a first mortgage Loan and thereby evade Pennsylvania Usury Laws in connection with the Loan;

    c.    Failing to ensure that all payments were made to creditors and others as listed on the HUD-1 Settlement Statement relating to the Loan;

    d.    Misrepresenting to Plaintiff that the Loan would satisfy certain debt when, in fact, it did not;

    e.    Misrepresenting the terms of the Loan to Plaintiff to induce her to enter into the Loan;

    f.    Failing to properly and accurately disclose the amount financed in connection with the Loan;

g.     Failing to clearly and accurately disclose the finance charge in connection with the Loan;

h.     Failing to accurately disclose the annual percentage rate in connection with the Loan;

i.     Failing to comply with the Truth In Lending Act;

j.     Failing to comply with the Home Ownership and Equity Protection Act by failing to provide Plaintiff with the advance disclosures required by HOEPA at least three days prior to the consummation of the Loan;

k.     Misrepresenting to Plaintiff that it was in her best interest to transfer the deed to her property out of her childrens' names and charging her an unreasonable fee to record the new deed;

l.     Upon information and belief fraudulently converting a portion of the Loan proceeds that were supposed to have been paid to the Plaintiff; and

m.     Engaging in other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

WHEREFORE, Plaintiff prays this Court to:

(a)     Enter an order that rescinds the transaction upon which the Parkway Defendants and/or First Union/Wachovia rely pursuant to 73 P.S. § 201-9.2;

(b)     Award actual damages equal to the amount of the Loan, $29,250.00, plus all money paid under the terms of the Loan;

(c)     Award treble damages pursuant to 73 P.S. § 201-9.2;

(d)     Award punitive damages; and

(e)     Award attorneys' fees and costs pursuant to 73 P.S. § 201-9.2 and such other relief which this Court deems appropriate.

## COUNT X
## PENNSYLVANIA UNFAIR TRADE PRACTICES AND
## CONSUMER PROTECTION LAW,  73 P.S. § 201-1 ET SEQ., ("UTPCPL")

## AGAINST MATTLEMAN WEINROTH & MILLER

100. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

101. The conduct of Mattleman constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq.

102. Mattleman acted intentionally so as to induce Plaintiff to enter into the transaction.

103. Mattleman engaged in unfair and deceptive trade practices rendering Plaintiff unaware of the actual terms and obligations of the Loan.

104. Mattleman utilized artifice and deception to take advantage of Plaintiff's ignorance, confusion and lack of sophistication as it knew or should have known that Plaintiff, up until the time of settlement, had little understanding of the detrimental aspects and risks of the Loan and was unaware of the various charges imposed upon her in connection with the transaction.

105. Mattleman has specifically benefitted from this fraudulent transaction, and others like it, as Mattleman has been engaged by the Parkway Defendants to serve as foreclosure counsel after the Plaintiff was unable to make payments on this onerous and unfair loan.

106. Specifically, Mattleman committed unfair and deceptive trade practices, including, but not limited to, the following:

    a.    Enabling the Parkway Defendants to arrange a high-cost, high-interest Loan to Plaintiff which consolidated unsecured debt thereby increasing the risk that Plaintiff's home would be subject to foreclosure and failing to inform Plaintiff of the increased risk;

    b.    Charging the Plaintiff attorneys fees in connection with the Loan yet failing to provide legal services to justify the fee;

    c.    Charging the Plaintiff attorneys fees in connection with the Loan yet failing

to properly advise Plaintiff of the risks and detrimental aspects of the Loan;

d.  Failing to properly explain to Plaintiff its role in the transaction and taking advantage of its position and Plaintiff's lack of sophistication in financial matters;

e.  Enabling a Loan to the Plaintiff that Defendant knew was disadvantageous to the Plaintiff and Defendant knew Plaintiff could not afford so that Defendant could represent the Parkway Defendants in a mortgage foreclosure action against the Plaintiff pursuant to an arrangement it had with the Parkway Defendants if Plaintiff defaulted on the Loan;

f.  Failing to ensure that all payments were made to creditors and others as listed on the HUD-1 Settlement Statement relating to the Loan;

g.  Upon information and belief, fraudulently converting a portion of the Loan proceeds that were supposed to have been paid to the Plaintiff; and

h.  Engaging in other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

WHEREFORE, Plaintiff prays this Court to:

(a)  Enter an order that rescinds the transaction upon which the Parkway Defendants and/or First Union/Wachovia rely pursuant to 73 P.S. § 201-9.2;

(b)  Award actual damages equal to the amount of the Loan, $29,250.00, plus all money paid under the terms of the Loan;

(c)  Award treble damages pursuant to 73 P.S. § 201-9.2;

(d)  Award punitive damages; and

(e)  Award attorneys' fees and costs pursuant to 73 P.S. § 201-9.2 and such other relief which this Court deems appropriate.

## COUNT XI
## PENNSYLVANIA UNFAIR TRADE PRACTICES AND
## CONSUMER PROTECTION LAW,  73 P.S. § 201-1 ET SEQ., ("UTPCPL")

## AGAINST THE PARKWAY DEFENDANTS AND ALLGOOD

107.  Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

108.  The conduct of Defendants constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq.

109.  Defendants utilized artifice and deception to take advantage of Plaintiff's ignorance, confusion and lack of sophistication as they knew or should have known that Plaintiff, up until the time of settlement, had little understanding of the detrimental aspects and risks of the Loan and was unaware of the various charges imposed upon her in connection with the transaction.

110.  Specifically, Defendants committed unfair and deceptive trade practices, including, but not limited to, the following:

      a.      Defendants grossly exaggerated the value of the Premises in the appraisal of $46,000.00 where, upon information and belief, the property had a much lower value than the value at which it was appraised so that Plaintiff would qualify for a Loan with the Parkway Defendants in a higher amount than Plaintiff would otherwise qualify for;

      b.      Defendants worked together to overstate the value of the property to facilitate a loan for a greater amount of money than the property was worth so that it would be impossible for Plaintiff to refinance the Loan with another lender;

      c.      Defendant Allgood violated the Uniform Standards of Professional Appraisal Practice and the Real Estate Appraisers Certification Act; and

      d.      Defendants engaged in other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

WHEREFORE, Plaintiff prays this Court to:

      (a)      Enter an order that rescinds the transaction upon which the Parkway

Defendants and/or First Union/Wachovia rely pursuant to 73 P.S. § 201-9.2;

(b)    Award actual damages equal to the amount of the Loan, $29,250.00, plus all money paid under the terms of the Loan;

(c)    Award damages to the Plaintiff resulting from her inability to refinance thee Loan;

(d)    Award treble damages pursuant to 73 P.S. § 201-9.2;

(e)    Award punitive damages; and

(f)    Award attorneys' fees and costs pursuant to 73 P.S. § 201-9.2 and such other relief which this Court deems appropriate.

## JURY DEMAND

The Plaintiffs demand a trial by jury.

Robert H. Montgomery, III, Esquire, P.C.

By: _____
Robert H. Montgomery, III, Esquire
Adam A. DeSipio, Esquire
230 South Broad Street, Suite 1302
Philadelphia, PA 19102
(215) 731-1404

Attorneys for Plaintiff
Lucinda Goodman

DATED:    June 7, 2002