IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lucinda Goodman | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-CV-3647 |
| | : | |
| v. | : | |
| | : | |
| Parkway Mortgage, Inc., a Successor to | : | |
| Sammons Mortgage, Inc.; Midland National | : | |
| Life Insurance Co.; Parkway Mortgage, | : | |
| Inc.; Greenfield Liquidation Corporation; | : | |
| J. Brian Moran; Wachovia National Bank of | : | |
| Delaware as Successor in Interest to First | : | |
| Union National Bank; Interbay Funding, | : | |
| LLC; Mattleman, Weinroth & Miller, | : | |
| P.C.; and Richard W. Allgood, IFA | : | |
| | : | |
| Defendants | : | |

## MOTION FOR JUDGMENT BY DEFAULT AGAINST
## MATTLEMAN WEINROTH & MILLER, P.C.

Plaintiff Lucinda Goodman, by and through counsel, hereby moves this Court for judgment by default against Defendant Mattleman, Weinroth & Miller, P.C. pursuant to Fed. R. Civ. P. 55(b) and in support of her Motion avers the following:

### INTRODUCTION

1. This is an action by Plaintiff, Lucinda Goodman, seeking relief from a predatory lending scheme in which Ms. Goodman sought a small loan for home improvements and ended up with a loan for $29,250.00 which included the payment of unsecured debt; a balloon payment; and a pre-payment penalty. In addition, some of the loan proceeds that were supposed to be paid directly to the Plaintiff were either fraudulently disbursed on retained by the Defendants.

## FILING AND SERVICE OF COMPLAINT

2. The instant action was commenced by the filing of a Complaint on June 7, 2002 against the original lenders (Parkway Mortgage, Inc., a successor to Sammons Mortgage; Midland National Life Insurance; Parkway Mortgage, Inc.; Greenfield Liquidation; and J. Brian Moran ) (hereinafter "the Parkway Defendants"); the assignees of the loan (Wachovia National Bank of Delaware and Interbay Funding); the appraiser (Richard W. Allgood); and the closing/escrow agent (Mattleman, Weinroth & Miller, P.C.).

3. Plaintiff served Mattleman, Weinroth & Miller, P.C. (hereinafter "Mattleman") with the Complaint on June 26, 2002, by personal service on an employee of Mattleman. A true and correct copy of the Return of Service is attached hereto as Exhibit "A."

4. Fed. R. Civ. P. 12(a)(1) requires that a Defendant serve an answer within 20 days after being served with the complaint.

5. Defendant Mattleman has not served an answer or otherwise responded to the Complaint to date.

6. Defendant Mattleman, a professional corporation, is not in military service and is not an infant or incompetent person.

7. Since Defendant Mattleman has failed to plead or otherwise defend this action in accordance with the Federal Rules of Civil Procedure, Plaintiff is entitled to Judgment by default against Mattleman pursuant to Fed. R. Civ. P. 55.

8. As alleged in the Complaint, Plaintiff is entitled to damages against Mattleman for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law "UTPCPL"), 73 P.S. § 201-1 et seq. and for Conspiracy to Commit Fraud and Conversion. Plaintiff's claims against

Mattleman for violations of the UTPCPL and for Conspiracy to Commit Fraud and Conversion provide Plaintiff with the right to recover actual damages, treble damages, punitive damages, attorney's fees and costs.

## FACTS

9. Plaintiff, Lucinda Goodman, resides at 5413 Belmar Street, Philadelphia, PA 19143 (hereinafter the "Property"). A Verified Statement of Lucinda Goodman, which sets forth the facts underlying Plaintiff's claims, is attached hereto as Exhibit "B." Verified Statement at ¶ 1.

10. As alleged in the Amended Complaint, in or about July of 2000, Plaintiff sought a small loan for home improvements. Verified Statement at ¶ 4 and Complaint at ¶ 16.

11. Plaintiff contacted the Parkway Defendants by telephone and spoke to a representative and advised the representative that she was interested in obtaining a loan. Thereafter, the Parkway Defendants sent an agent to visit Plaintiff at her home in order to obtain information about Plaintiff's income and to determine the type of home improvements that Plaintiff desired.

12. The agent that visited Plaintiff's home wanted Plaintiff to use a home improvement contractor recommended by the Parkway Defendants and became angry at Plaintiff when Plaintiff informed the agent that she had already chosen a contractor to perform the work. Verified Statement at ¶ 4.

13. Thereafter, an agent of the Parkway Defendants contacted Plaintiff and informed her that the Parkway Defendants would extend a loan to her in the amount of $15,000.00.

14. Plaintiff asked the Parkway Defendants' agent what the amount of the monthly payments would be, but the agent would not reveal this information to Plaintiff. Complaint at ¶ 21.

15. Plaintiff was told that she was required to pay off third party creditors in order to qualify for and obtain the Loan. See Verified Statement at ¶ 5 and Complaint at ¶¶26-27.

16. A loan closing was held at the offices of Defendant Mattleman or at the Parkway Defendants' office located in Cherry Hill, NJ on or around September 6, 2000. Verified Statement at ¶ 9.

17. The Loan closing was attended by a representative of Defendant Mattleman which is a professional corporation engaged in the business of providing legal services, and acting as a closing/escrow agent, with offices located at Suite 2226, Land Title Building, Broad and Chestnut Streets, Philadelphia, PA 19110 and 401 Route 70 East, Cherry Hill, NJ 08034. Verified Statement at ¶ 10 and Complaint at ¶ 25.

18. Defendant Mattleman, through one of its attorneys, acted as the settlement agent and/or provided legal services at the Loan closing. Complaint at ¶ 25.

19. Plaintiff was informed Plaintiff that her monthly payments under the loan agreement would equal $200.00 to $300.00. Complaint at ¶ 26.

20. Based on the representations made by the Parkway Defendants' agent and by defendant Mattleman, through one of its attorneys, Plaintiff signed documents to obtain the loan from the Parkway Defendants. Complaint at ¶ 27.

21. The loan that the Defendants arranged for Plaintiff was in the amount of $29,250.00 at a stated annual percentage rate of 15.118% with monthly payments equal to $344.00, that included a balloon payment of $26,320.53 and a prepayment penalty (hereinafter the "Loan"). True and correct copies of the Truth-in-Lending Disclosure Statement, the HUD-1 Settlement Statement, and the Balloon Note are attached hereto collectively as Exhibit "C."

22. Mattleman charged Plaintiff $395.00 for "attorneys fees" in connection with the transaction yet it failed to provide legal services to the Plaintiff to justify the fee and failed to properly advise Plaintiff of the risks and detrimental aspects of the loan.. See HUD-1 attached as part of Exhibit "C."

23. Mattleman failed to properly explain to Plaintiff its role in the transaction and took advantage of its position and Plaintiff's lack of sophistication in financial matters.

24. As alleged in the Complaint, the Loan violated, among other statutes, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639; the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*;  and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*.

25. The purpose of TILA is to guarantee the accurate and meaningful disclosure of the costs of consumer credit and thereby to enable consumers to make informed choices in the credit marketplace.  *See, e.g.*, Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir. 1994).

26. HOEPA is an amendment to TILA that created a special class of regulated closed-end loans made at high annual percentage rates or with excessive costs and fees and is designed to prevent some predatory lending practices targeted at vulnerable consumers.  The Loan in this case was a high-rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa).  Complaint at Count I.

27. In acting as the closing agent and providing legal services in connection with the loan, Mattleman enabled Parkway Mortgage, Inc. to enter into a transaction with Plaintiff that Mattleman knew violated the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639;  the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*.; and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*.

28. Neither the Parkway Defendants' agent nor the Mattleman attorney sufficiently explained the loan documents to Plaintiff, and the Parkway Defendants' agent and the Mattleman attorney failed to inform Plaintiff that the Loan contained a balloon payment or prepayment penalty.  Complaint at ¶ 29.

29. Plaintiff was also told that she had to pay off third party creditors in connection with the Loan and the Loan was arranged so that $9,711.47 was disbursed to third party creditors even though Plaintiff did not request that such debts be paid off.  Verified Statement at ¶ 9.

30. Under the terms of the Loan, Plaintiff was supposed to have been paid $15,000.00 of the Loan proceeds directly, however, despite repeated requests by Plaintiff for the money, she only received $9,000.00 and she believes that $6,000.00 was retained by the Parkway Defendants and/or Mattleman.  Verified Statement at ¶ 15-16 and Complaint at ¶ 32.

31. Plaintiff believes that, in connection with the Loan, Mattleman undertook the responsibility of issuing the checks to the various third-party creditors yet, Plaintiff does not believe that all of the creditors were paid off as listed on the HUD-1 Settlement Statement.

32. The HUD-1 Settlement Statement provides for $3,458.35 to be paid to the Water Revenue Department yet Plaintiff could not confirm that this payment was made by Mattleman.

33. Plaintiff also paid $3,740.40.00 in various loan-related charges and fees in connection with the Loan of which she was not aware.  Verified Statement at ¶ 13 and Complaint at ¶ 39.

34. In acting as the closing agent and providing legal services in connection with the loan, Mattleman enabled Parkway Mortgage, Inc. to arrange this high-cost, high-interest loan to Ms. Goodman which consolidated unsecured debt thereby increasing the risk that her home would be subject to foreclosure and failing to advise Ms. Goodman of that risk.

35. As a result of this onerous loan, Plaintiff fell behind on her monthly mortgage payments. In or about August 2001 Interbay Funding, LLC, as Servicer for First Union National Bank as Indenture Trustee (hereinafter "Interbay") filed a foreclosure action against Plaintiff in the Court of Common Pleas of Philadelphia County, August Term 2001, Number 3178.

36. Even though Mattleman provided legal services to Plaintiff and when the Loan originated, Mattleman filed a Complaint in foreclosure on behalf of Interbay against Plaintiff a little over one year later when she fell behind on her payments.

37. At the time this Loan originated, it is alleged that Mattleman had an arrangement with Parkway Mortgage, Inc. and its assignees whereby Mattleman was given the foreclosure work against consumers who defaulted on these predatory Loans. Consequently, the more disadvantageous the loan for the consumer, the more advantageous the transaction was for Mattleman's foreclosure business.

38. This created a situation whereby Mattleman benefitted from overlooking the improprieties of the Loan because when Plaintiff inevitably defaulted on the Loan, Mattleman was given the foreclosure work and made attorney's fees in connection with that work.

39. As a result of the conduct of Mattleman, Plaintiff brought this present lawsuit against them for Conspiracy to Commit Fraud; Conversion; and for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

## CAUSES OF ACTION AND DAMAGES

40. Mattleman's conduct, as set forth above, constituted common law Conspiracy to Commit Fraud and Conversion as well as a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*. Plaintiff should, therefore, be awarded treble damages and

punitive damages under 73 P.S. §201-9.2. In addition, statutory attorney's fees under 73 P.S. §201-9.2 should be awarded.

41. A court may, upon such motion, award actual and punitive damages without an evidentiary hearing if definitive figures are offered in documentary evidence or in affidavits that provide an adequate substitute for live testimony. Dundee Cement Co. V. Howard Pipe & Concrete Products, Inc., 722 F. 2d 1319, 1323 (7th Cir 1983); Transportes Aeroes De Angola v. Jet Traders Investment Corp. Et al., 624 F. Supp 264, (D. De. 1985). A court may similarly award attorney's fees in a default judgment without a hearing. Glenn v. Chatmon, 1988 WL 11677 (E.D. Pa. 1988).

42. Punitive damages are appropriate when the defendant's conduct was "malicious, wanton, reckless, willful or oppressive." Feld v. Merriam, 506 Pa. 383, 395 485 A. 2d 742, 747-48 (1984).

43. Mattleman's taking of Plaintiff's Loan money and failure to apply it for the proper and agreed purpose constituted an interference with Plaintiff's right to the Loan proceeds and supports the claims brought against it by the Plaintiff.

**Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*. against Mattleman**

44. The conduct of Mattleman constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et. seq.*, in that, among other reasons, Mattleman:

   a. Charged Plaintiff $395.00 for "attorney's fees" yet failed to represent Plaintiff's interests at the Loan closing;

   b. Charged Plaintiff $395.00 for "attorney's fees" yet failed to identify itself to Plaintiff or make known to Plaintiff that it was charging her for services in connection with the Loan;

    c.    Charged the Plaintiff attorney's fees in connection with the Loan yet failing to properly advise Plaintiff of the risks and detrimental aspects of the Loan;

    d.    Failed to properly explain to Plaintiff its role in the transaction and taking advantage of its position and Plaintiff's lack of sophistication in financial matters;

    e.    Failed to ensure that all payments were made to creditors and others as listed on the HUD-1 Settlement Statement relating to the Loan;

    f.    Upon information and belief, fraudulently converted a portion of the Loan proceeds that were supposed to have been paid to the Plaintiff;

    g.    Enabled the Loan by providing legal services and acting as the closing agent even though Mattleman knew the Loan violated the law and was disadvantageous to the Plaintiff;

    h.    Orchestrated and facilitated the closing of this onerous Loan that Mattleman knew Plaintiff could not afford when Mattleman knew that it would benefit financially by representing the holder of the Loan in a foreclosure action against the Plaintiff.

45. The UTPCPL does not set forth a formula for the assessment of actual damages; Young v. Dart, 428 Pa.Super 43; 630 A.2d 22 (1993); however, "a deceptive act should be penalized by a liberal measure of the reasonable consequences of the act to the injured party." In re Andrews, 78 B.R. 78, 84 (E.D. Pa. 1987), citing In re Jungkurth, 74 B.R. 323 (E.D. Pa. 1987).

46. Pursuant to 73 P.S. §201-9.2 of the UTPCPL, Plaintiff is entitled to actual damages against Mattleman in the following amount:

    a.    All fees charged to Plaintiff in connection with the Loan (see Exhibit "D"):    $3,740.40

    b.    Difference between amount of money that should have been paid directly to the Plaintiff ($15,000) and the amount that was paid to Plaintiff ($9,000.00):    + $6,000.00

  c.  The amount that should have been paid to the Water
Revenue Department on Plaintiff's behalf:  +  $3,458.35

ACTUAL DAMAGES AGAINST MATTLEMAN UNDER THE UTPCPL:  $13,198.75

47. In addition, pursuant to 73 P.S. §201-9.2 of the UTPCPL, the Court, in its discretion, may award up to three times the amount of actual damages sustained and may provide such additional relief as it deems necessary and proper.

48. Mattleman's conduct in not disbursing money pursuant to the HUD-1 and its conduct in enabling this fraudulent loan so that it could charge fees to Plaintiff and benefit from filing a foreclosure action against Plaintiff was intentional and outrageous and forms the basis for treble and punitive damages against Mattleman, pursuant to 73 P.S. §201-9.2 of the UTPCPL.

49. Mattleman should be held to a higher standard because of its expertise in this field.

50. Plaintiffs request that punitive damages be awarded against Mattleman in the amount of $100,000.00 each.

51. Pursuant to 73 P.S. §201-9.2 of the UTPCPL, Plaintiffs are also entitled to reasonable attorney's fees and costs.

52. Plaintiffs' counsel has filed a Certification of Legal Fees in support of Plaintiffs' Motion for Judgment by Default against Mattleman which sets forth, in detail, Plaintiffs' attorney's fees and costs in the amount of $10,126.10. The Certification of Legal Fees is attached to this Motion as Exhibit "D."

53. Damages should, therefore, be awarded to Plaintiffs under the UTPCPL as follows:

  a.  Actual damages as set forth above:  $13,198.75

    Treble damages  <u>  3</u>

      $39,596.25

|   |   |   |
|---|---|---|
| b. | Other relief (Punitive damages) | $100,00.00 |
| c. | Reasonable attorney's fees and costs | $10,126.10 |

TOTAL DAMAGES AGAINST MATTLEMAN
UNDER THE UTPCPL                                                      **$149,722.35**

**Conspiracy to Commit Fraud against Mattleman**

54. The Parkway Defendants and Mattleman unlawfully and with intent to defraud the Plaintiff conspired and agreed together to injure the Plaintiff and to deceive Plaintiff into entering into this fraudulent and unlawful Loan by engaging in conduct which includes:

    a. Defendants conspired and agreed to misrepresent to Plaintiff that the Loan would satisfy certain debt when, in fact, it did not;

    b. Defendants conspired and agreed to misrepresent to Plaintiff that the Loan proceeds would be, and were, disbursed in accordance with the HUD-1 Settlement Statement;

    c. Defendants conspired and agreed to unlawfully retain some of the Loan proceeds and to not disburse the Loan proceeds as authorized by the Plaintiff on the HUD-1 Settlement Statement;

    d. Defendants conspired and agreed to require Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could have a first mortgage loan and thereby evade Pennsylvania usury laws;

    e. Defendants conspired and agreed to require Plaintiff to borrow additional sums to pay her utility bills and other debts, so that the Parkway Defendants could make a secured loan in an amount high enough in relation to the value of the Premises so that Plaintiff is unable to refinance her Loan with Defendants' competitors;

    f. Defendants conspired and agreed to misrepresent to Plaintiff that she would receive a certain amount of the Loan proceeds directly yet the Parkway Defendants and/or Mattleman retained a portion of those proceeds that were supposed to have been paid to Plaintiff;

    g.    Defendants conspired and agreed to misrepresent to Plaintiff the actual amount of the Loan and/or the amount of the fees to be paid to the Parkway Defendants and others;

    h.    Defendants conspired and agreed to misrepresent to Plaintiff that the Loan was in Plaintiff's best interest when Defendants knew that it was not in her best interest;

    i.    Defendants conspired and agreed to have Mattleman notarize the Loan documents and enable the Loan even though both Defendants knew it would be disadvantageous to the Plaintiff and would likely result in Plaintiff suffering from financial hardship and being unable to pay her monthly bills;

    j.    Defendants conspired and agreed to have Mattleman notarize the Loan documents and enable the Loan even though both Defendants knew the Loan violated the provisions of TILA, HOEPA, ECOA, and the UTPCPL;

    k.    Defendants conspired and agreed to have Mattleman benefit from this fraudulent transaction by having an arrangement whereby Mattleman would represent the Parkway Defendants in a mortgage foreclosure action against the Plaintiff when Plaintiff, as a result of the Loan, suffered financial hardships and fell behind in payments on the Loan.

55. Prior to the Loan closing, the Parkway Defendants engaged in communications with the Plaintiff in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan and to unlawfully retain a portion of the proceeds of the Loan.

56. The Parkway Defendants and Mattleman held a Loan closing on or about September 6, 2000 in the pursuit of the common purpose of getting Plaintiff to enter into the fraudulent and unlawful Loan and to unlawfully retain a portion of the proceeds of the Loan.

57. Several times after the Loan closing, the Parkway Defendants engaged in communications with the Plaintiff in the pursuit of the common purpose of unlawfully retaining a portion of the proceeds of the Loan.

58. Mattleman has specifically benefitted from this fraudulent transaction, and others like it, as Mattleman has been engaged by the Parkway Defendants to serve as foreclosure counsel after the Plaintiff was unable to make payments on this onerous and unfair loan.

59. The above misrepresentations and omissions were made with knowledge of their falsity and with the intent to induce Plaintiff to enter into the Loan and Plaintiff reasonably relied on them and suffered damages as a result.

60. As a result of the above Conspiracy to Commit Fraud, Defendant is liable to the Plaintiff for actual damages, as set forth above, in the amount of **$13,198.75**.

61. Mattleman's conduct, specifically its conduct in interfering with Plaintiff's use of the Loan proceeds and enabling the fraudulent loan so that it could charge fees to Plaintiff and benefit from filing a foreclosure action against Plaintiff, was intentional and outrageous and forms the basis for common law punitive damages against Mattleman. Plaintiff requests that punitive damages be awarded against Mattleman in the amount of **$100,000.00**.

### Conversion against Mattleman

62. As a result of the mortgage transaction, Plaintiff received a Loan whereby she was entitled to the use of the Loan proceeds for her personal use and to pay off various secured and unsecured debt.

63. At the time of settlement, Plaintiff was required to authorize the payment of some of the Loan proceeds to be forwarded to various creditors in order to pay off some of Plaintiff's debt.

64. The Parkway Defendants and/or Mattleman failed to forward $3458.35 to Plaintiff's creditors as required by the terms of the Loan and took the proceeds for their own use.

65. Under the terms of the Loan, $15,000.00 of the Loan proceeds were to be paid directly to Plaintiff yet the Parkway Defendants and/or Mattleman only paid Plaintiff $9,000.00 and took the remaining proceeds for their own use.

66. The Parkway Defendants' and/or Mattleman's taking of Plaintiff's Loan money and failure to apply it for the proper and agreed purpose constituted an interference with Plaintiff's right to those funds.

67. As a result of the interference with Plaintiff's property, Plaintiff has not enjoyed the benefit of the property which belongs to her.

68. As a result of the interference with Plaintiff's property, Plaintiff has suffered damages and Mattleman is liable to the Plaintiff for the actual damages, as set forth above, in the amount of **$13,198.75**.

69. The Parkway Defendants' and/or Mattleman's behavior in taking the funds was intentional and with a wanton disregard for Plaintiff's right to the property as to support an award for punitive damages against Mattleman. Plaintiff requests that punitive damages be awarded against Mattleman in the amount of **$100,000.00**.

## CONCLUSION

70. Although this suit has been brought against the lender and other parties, Mattleman was on the "front-line" of this predatory lending scheme and its failure to participate in this suit and its attempt to conceal its role should not be rewarded.

71. As attorneys, Mattleman should not be permitted to charge fees to a consumer in connection with a transaction that it knows violates the law and it knows Plaintiff cannot afford in

an effort to generate future foreclosure business when the Plaintiff falls behind in payments on this bad Loan.

72. The only way to prevent attorneys that provide such services from destroying the protections provided to consumers by federal and state law is to punish them with punitive damages.

73. Damages should be awarded to Plaintiff against Mattleman as follows:

|   |   |   |   |
|---|---|---|---|
| a. | Actual damages: | | $13,198.75 |
| | Treble damages under the UTPCPL: | x | 3 |
| | | | $39,596.25 |
| b. | Punitive damages: | + | $100,00.00 |
| c. | Reasonable attorney's fees and costs | + | $10,126.10 |
| **TOTAL DAMAGES AGAINST MATTLEMAN:** | | | **$149,722.35** |

WHEREFORE, Plaintiff respectfully ask this Court to enter a default judgment against Mattleman in the amount set forth above. Plaintiffs further requests that, if Mattleman files an Answer or other response to the Complaint after the date the instant Motion for Default Judgment is filed, that Plaintiff, upon application to the Court, be awarded counsel fees and costs for preparing the Motion for Default and counsel fees and costs for effecting service of Process on Mattleman pursuant to Fed. R. Civ. P. 4(d)(5).

Respectfully Submitted,

Robert H. Montgomery, III, Esquire, P.C.

                                                        _____
Robert H. Montgomery, III, Esquire
Adam A. DeSipio, Esquire
230 South Broad Street
Suite 1302
Philadelphia, PA 19102
(215) 731-1404

Attorneys for the Plaintiff
Lucinda Goodman

Date: September 25, 2002